Please be seated. Our second case is 23-4713, United States v. Jones. Mr. Anderson, whenever you're ready. Good morning. May it please the Court. Howard Anderson, CJA counsel for Mr. Jones. As the Court is aware, we've got one substantive issue in the case and one procedural issue in the case. The substantive issue is whether the law allows a district judge to give the probation unfettered discretion to order drug testing during a period of supervised release. And then the procedural question is whether the plea agreement in this case, or generally, would prevent the Court from reaching that question on the merits. Let me start briefly with the substantive question. As the... On the substantive question, can you start by explaining to me why Condition 10 actually assigns any discretion to the probation officer? I read Condition 10 as simply assigning who pays for the testing, while Condition 3 actually sets the number of tests. I know both parties seem to agree that it gives discretion to the probation officer, but I don't understand how I can read the language of Condition 10 to do anything other than direct who pays for the very number of tests that are assigned in Condition 3. And I don't know that we're going to ever get there, given the hurdles we've got. But you wanted to start with the substance, so help me understand how I read Condition 10 that way. Sure, Judge, and to be clear, I have no objection to the Court construing the language as written that only three tests are authorized unless Judge Cain or somebody else signs off on a fourth or fifth. I have no objection at all if that's how you want to interpret the statute. You've argued... Your argument is that it, like, offers discretion to the probation officer to set the number of tests, and what I'm asking you is, what is the basis for your claim that it does that? Well, one, I would say the government says that it does, and so that's the position that they take. I will say, again, this is on plain error, so I don't know exactly what Judge Cain had in mind. I will say that I have... I don't really care what he had in mind. I care what he wrote down. Right, and so... What he wrote down is, you must submit the testing, right, but we've already done that in Condition 3, and you must contribute to the cost of such program, blah, blah, blah, blah, blah, and cooperate in securing third-party payment. Right, all of those things seem... You're not complaining that the probation officer can't facilitate partial payment for the drug testing program? Not at all, Judge. So, help me understand why do I read Condition 10 in the way that you've suggested? Well, again, Judge, I don't object if you want to interpret it that way. That would resolve the issue, all right? But, again, I am litigating this in several cases. That condition, as you know, is a standard one in South Carolina. I have one where I was trial counsel. I objected with Judge Coggins, and then Judge Coggins says, no, I'm leaving it up to probation. So that's my view as to how the district courts understand that to mean. But if this court wants to say, you have to say, I'm now giving you discretion. I have no objection that that would solve the issue. I'm concerned with how you can get past the provisions of the plea agreement. You waived everything concerning the conviction or sentence. And so, Judge, if I could just make one... You should answer his question. I guess you're right. Despite your desire not to, you should answer his question. And so, Judge, what I am suggesting is that this court should align itself with, say, the Ninth Circuit in Wells, right? So the issue that we have here is that when the parties take a plea, they are assuming the risk that the judge will make findings that are against them. And so whatever is within the realm of a legally appropriate sentence, that's the risk that the parties take. My position here is that no judge could ever issue this. And so whether you want to view it as being above the statutory maximum or whether you want to view it as otherwise ultra vires... Your view is that any legal error is exempt from the waiver? I mean, that's like a... The Ninth Circuit might do it in Wells. I will tell you as a rhetorical matter, when you respond to the question by saying you should adopt the Ninth Circuit's approach, I'm not sure that's the best rhetorical move. Maybe look at the Fourth Circuit because that's not the approach that we take, right? We don't have this freewheeling. Any error is beyond the power of the court. And so therefore, the appellate waiver actually doesn't cover anything other than fact-finding. Well, Judge, that's not my position here. If you look at Lubkin, which the government cited in their 28th letter, there, the opinion by Judge Wilkinson says, the claim that the defendant is making, which was different than what was at issue in Cornett, is that this defendant is saying, you know, you can get 15 years to life if you're ACCA-eligible. I just don't think I'm ACCA-eligible. But Judge Wilkinson noted that the defendant wasn't challenging that if findings were made, that sentence would be legally authorized. It's fair. We have identified a few, as we've said, a few narrow exceptions to the plea waiver that are not included. And so what we've sort of described, I think, as sort of fundamental errors that would not have been contemplated by the parties, right? And one of those is sentencing somebody beyond the statutory maximum that could have been applied against someone in this person's situation, right? So if you sentence somebody for trespass, for, you know, you happen to be executed, right? We say that that's improper. We've included a few other fundamental errors, like, you know, sentencing based on race, right? Or sentencing based on random acts, right? If a district court judge sentenced based on throwing darts at a dartboard, right? We might say that that's the kind of fundamental error, right? But we've never suggested that, like, the phrasing, the procedural phrasing of a condition of supervised release is such a fundamental error that it couldn't have been contemplated by the parties at the time, have we? I mean, what's the best case you've got that suggests that this type of procedural issue is the type of fundamental error we've exempted from appeal waivers? Well, Judge, I mean, that's like the Cornett case that Lubkin cites, right? So my position on the appellate waiver issue is that my position in this case... Cornett was exceeded statutory maximum. Right, and so that's essentially what this argument here, that no judge, that the law does not allow any judge in any court to ever impose the condition that gives unfair discretion. That's the claim that I say is exempt from the appeal waiver. But the appeal waiver says, in exchange for the concessions made by the government in this plea agreement, the defendant waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action. That's about as broad as you can get. With the exception of if it exceeds the statutory maxima, for example. And again, that's essentially the claim... That's as broad as you can get. But... We're contesting something in the sentence. And so if the judge had said, you have to get drug tested every day for the rest of your life during supervised release, that would clearly fall within the waiver because that would be within the realm of what the law allows a judge to say. And I might agree or disagree with the judge as to whether it applies. That would fall within the waiver. My claim here, for the purposes of the appeal waiver, is that this condition is not allowed by any judge ever. And so therefore, it could not have been within the contemplation of the parties that a judge is going to sentence someone essentially at whim to something that he lacks the power to impose. And that's the very narrow claim here. Going back to the substantive point that I wanted to make here, the government wants to draw a distinction between special conditions and mandatory conditions. The First Circuit in Padilla, the Seventh Circuit in Bonanno, Ninth Circuit in Stevens, the Tenth Circuit in Miller, they did not draw the distinction between substantive... Sorry, between special and mandatory. As an officer of the court, I will report that the Sixth Circuit has recently adopted the government's position, and I want to make sure that the court is aware of that. And that's a case called Vaughn, 119F4-1084. That was decided at the end of last year. So there is one circuit that has adopted the government's position. I don't think that's at all fatal to this case, even on plain error, because on the substantive question, I would just like my colleague to answer this question. This court has said that it is... It's not typically how it works, right? I know, but I would encourage you to ask him this question. This court has... It's not typically how it works either. I would just posit this, then, Your Honor. This court... You're getting there. You're getting much closer. This court has said that it is an illegal delegation to give the probation office discretion to set the number of restitution payments. And I would suggest that there is no fundamental difference between setting the number of restitution payments and the number of drug tests. And that has been the law in this circuit since 1995, U.S. versus Johnson. Does it depend on the purpose of the drug tests? There's a distinction, isn't there, between drug tests for enforcement purposes and drug tests for therapeutic purposes? And so if it's being done, you know, in the context of sort of drug treatment, you know, in a drug rehab facility, that's not being run by probation. That's being run by the provider. But the problem here, as though in the brief, the substantive problem is that Congress has stripped the district court of discretion as to what to do if the drug test comes back positive. If you fail two within a year, we have to revoke your supervised release. And precisely because the judge has no discretion on the back end, we need to make sure that the judge is exercising discretion on the front end to say how many times you're gonna run this gauntlet. And it is very hard for poor people to go, I have had clients that get violated on supervised release and they have asked me to bargain in plea bargaining to resolve supervised release. Please give me more time in prison just to release me from the supervised release because it's really hard when I live out in the country and there's no bus and I got a job at McDonald's but I got to go to the drug testing office on a short notice and I got to find a ride. It's a huge burden. I've had at least two clients that have traded more prison time on a violation for supervised release just to be done with this. And so I submit that it's a serious claim and it's not just semantics here, Judge. So even if we, let's assume we agree with your view of this, what this condition is intended to do, you indicated at least twice, maybe more, that we're on plain error review. So how is this plain error? And so Judge, as you know, you first have to decide if it's plain, so was there error, then second, was it plain? I submit that given the five other circuits that have said this, the plain language of the statute and given Johnson, which says that you can't delegate a restitution, I think that would qualify as plain error. If for some reason the court says that the Sixth Circuit has now mulled it enough, I will say that there are several other appeals that I have that are stayed in this case, including ones where I have objected at the trial court that are coming up here. And so this court is going to have to address it at some point because I think I've got four other appeals that are going to raise the same issue. And so I would encourage you just to go through the analysis in the interest of economy. First decide, was it error? Yes, no. And then was it plain? Yes, no, because you're going to reach it because I've got several others that have been held in abeyance pending this decision where I did object as trial counsel. All right, thank you very much. Thank you, Your Honor. May it please the court. Your Honors, I share the same concern. I'm not sure how we get past the appeal waiver in this case. Mr. Jones entered a knowing and voluntary appeal waiver in exchange for substantial benefits where he agreed to give up his right to challenge matters decided at a sentencing hearing. This procedural question as to whether and what level of discretion probation may or may not have been granted in Special Condition 10 is clearly not a question for the court. It's clearly a matter decided at sentencing. This court decided in Lewis and in Harrison that conditions of supervised release are a matter of sentencing and they do fall within the scope of a knowing and intelligent appeal waiver. Under Blick, with this fulsome Rule 11 hearing, this broad appeal waiver language which Mr. Jones does not challenge and does not contest, the appeal waiver is enforced. Can I ask about that?  So don't we assume the basis for counsel's argument that he's alleging that this provision gives the probation officer unfettered discretion to determine how many drug tests James should undergo when he's released, whenever he's released. And so if we assume that to be true, why isn't that a sentence in violation of the law that no judge would be authorized to impose? And so you may disagree as to whether or not that's correct and so that's the merits argument, but if we assume that to be true, why isn't that beyond the scope of the waiver? Well, I've got to acknowledge, I should have probably acknowledged as soon as I came up here that we agree with Judge Richardson's read of Special Condition 10. What we did when we briefed this case is we assume the construction of the conditions as Mr. Jones framed them. We actually think that there's a better reading that... Yeah, but that's not responsive to the Chief's question because the Chief's question says that's a merits question. Sure. And when we look at a plea waiver, we don't make a quick look at the merits and determine whether they're frivolous or not, but instead we accept their argument for what it is and we evaluate whether it is first encompassed within the plea waiver and then whether there's a carve out to the plea waiver that's sort of analogous to saying this is like a sentence that exceeds the statutory maximum. That's right. Right? And so going to the merits is sort of non-responsive. Right? So why is this not like sentencing a 10-year statutory maximum defendant to 15 years? Because we've said that carves out of even a clear plea waiver. Why is this not like that? Right. This is very unlike Cornett. Cornett, this court in Lepkin, Judge Wilkinson wrote that Cornett was a unique circumstance where retroactively the Supreme Court found the residual clause unconstitutional. And when the court did so, they said that the district court never had the authority to impose a sentence on the residual clause at all. And it was never a source of lawful authority to sentence the defendant in Cornett. Here, the dispute is as to whether the 3553A3 statute on delegation requirements was complied with by Judge Kane or not. Where I meant to go when I was dabbling in the merits, and I think that I take the judge's correction well, was that we don't believe that probation office has been given unfettered discretion. We think it's a financial condition. We think it adds to and does not contradict. We think it simply says you must pay. But even if it did, so what I thought you were going to go to was, even if it did, accepting the Chief's sort of framing here, and you might want to fight the framing. You might say, we do look at the merits. I don't know. But if you accept the Chief's framing that we accept the merits of the claim, and so we assume for a minute that the probation officer was given unfettered discretion to set these contrary reality, but I think we might accept that as an allegation. I thought what you would say is, is like this is not the type, this sort of procedural supervised release provision is not the type of fundamental error that would have been beyond the party's contemplation, right? You went to the court in Blick. You might think about the court in Thornsberry that sort of says like, yeah, there's these like core fundamental problems, right? You're sentencing based on throwing darts, or you're sentencing somebody that was supposed to get 10 years to 20 years. Those are like so fundamental, effective miscarriages of justice that we're gonna ignore the plain language of a plea waiver. All right, I accept those. The question is, do we extend that to procedural aspects of a supervised release violation because they're not, one might posit, quite so fundamental in the structure that we have here? Well, if we do, it would be a very different exception than the way Cornett describes. And if we do, then we're gonna be here on 3553 errors, even after appeal waivers, because that is a statutory delegation to what a court must do at sentencing, what it must consider. And despite appeal waivers, we're gonna start calling those fundamental defects that unwind convictions and sentences. It's gonna undermine, as Lubkin indicated, that one of the chief bargaining chips that defendants have to offer. It's going to require the court to do end runs around appeal waivers and litigate the merits before deciding whether to enforce them. But instead, what we have here is not one of these core fundamental violations, such as a sentence that exceeds the statutory maximum, sentencing based on race, a plea that is affected by ineffective assistance of counsel. So there's a Sixth Amendment violation even in entering the appeal waiver at all. This is like none of those. This is a six-word sentence in Special Condition 10 where the defendant is concerned that too much authority has been delegated to a probation officer for a term of his supervision after he's released from prison. That is very unlike those fundamental defects that this court has recognized. And even when he invites this court to adopt an approach in Wells, look at Wells. Wells rejected this argument. Wells wrote that it declined to extend the meaning of an illegal sentence, this is Wells at 585, to encompass sentences that potentially violate Section 3583D. So even the Ninth Circuit approach, which is somewhat like a Cornett approach, looking for illegal sentences, somewhat like what was argued in Lubkin, even Wells said 3583D errors are not illegal sentences within the Ninth Circuit's framework. Well, you know, I think our cases make the point that a district court can't delegate what are considered to be core judicial functions to another party, in this case, the probation officer. So for example, I think it would be beyond the scope of a waiver if the court were to delegate whether or not a defendant should undergo a certain kind of treatment, sex offender treatment, for example. So why isn't this case more like that than not? Judge, you're right. What this court has said is that district courts decide these core judicial questions, whether to impose a condition. Broad parameters was language used in Elbaz. General parameters, rather, was what was used in Elbaz. Broad framework has been used by this court, rather. Ultimate jurisdiction over whether to revoke. But this court has also said that substantial discretion over management, administration, means, and details are deferred to probation. And in this case, we can't ignore mandatory condition three, which is a part of the judgment, which does say that the court retains the jurisdiction. Not only does the court ultimately decide whether he's drug tested, which the court has decided, so it's not delegating the whether question to probation, but also the court's maintaining discretion and jurisdiction over the number of drug tests. So the deficiency that Mr. Jones complains of actually is in the judgment. It's in mandatory condition three. And looking at special condition 10, what it adds is a financial obligation. It's less detailed, but it does not contradict, and it does not provide any express delegation, like the out-of-circuit cases like Padilla, for example, Stevens, Bonanno, where there are express delegations with that language as determined by the probation officer. That is not found in special condition 10. So instead, what we have is a broad framework laid down by the court, and we have substantial discretion as to means and details left to probation. But with this condition, the only discretion probation has is to help collect payment. There's not a discretion delegated to probation on the number of drug tests in special condition 10. And so... So is it your view now? I understand that the briefing went by. Instead of what condition three says, which requires three drug tests, but as determined by the court, so the court is determining at least the second and third and further drug tests. If the probation officer said, like, I'm telling you you've got to do it without court approval, is it the government's position that that would violate the plea agreement? Or, I'm sorry, would violate the judgment that the district court entered here? It would. We believe that the judgment has authorized three tests, and if probation wants more, it needs to move to modify the conditions. And the court can do that. And that happens. Probation can go to the district court and say, he's failed two out of three, we need to keep doing this, but that requires court approval. That's right. The court ultimately retains the jurisdiction over the numbers question. The numbers question, it appears, is what Jones is primarily concerned about. And with this framing, with this mandatory condition three, the court has that discretion, not the probation officer. And if he fails a few tests, and the probation office petitions the court and says, we need 10 tests, we need 12 tests, we need weekly tests, it would be Judge Koehn who authorizes that, not the probation officer. Are you conceding now that those plea waivers don't mean what they say? I'm sorry, Judge. Right? I'm sorry, I didn't understand the question. You're conceding that these plea waivers, the waivers don't mean what they say in the plea agreement. I may be too dense to understand the question, Judge. I think the appeal waiver. Appeal waiver. I'm talking about the, yeah. The waiver in this thing, waives the right to contest either the conviction or the sentence. We believe it means what it says, and that it should be enforced. But we gotta look at everything to see whether it means what it says. Well, Judge, the only way that I could see that happening in this case is under a tar footnote two, the constitutional exception that this court has recognized does say in footnote two of a tar that there must be a colorable constitutional claim. And if this court wants to go down that road and engage in some analysis as to whether there was an unconstitutional delegation, that may require some peek behind the curtain. But even much like Wells, the constitutional cases that Mr. Jones cites are also fatal for him. Padilla wrote 415 F. 3rd at 2. 22 that the placement of the authority to set the maximum number of drug tests in the hands of a judge is a statutory choice. It is neither a matter of constitutional necessity nor condition necessary for the fair administration of justice. So Padilla says it's a statutory error, not a constitutional error. Miller says the same thing. That Mr. Miller, what the complaint that Mr. Miller advances, quote, was not an unconstitutional delegation of the court's judicial authority. That's Miller at 763. Bonanno, again, says that what Mr. Bonanno complains of is that the court went beyond the parameters of the statute and of section 3583D. So Padilla, Miller, Bonanno, they all say, even the cases that Mr. Jones advances, that this is not a constitutional error. This is a statutory error. This is what Lubkin wrote about. The ordinary business of trial courts are legal errors. This is what happens. And when someone gives up the right to challenge a legal error, they don't get to ignore the appeal waiver by using the word unconstitutional or illegal. And we're afraid that that's what Mr. Jones has done here. And so our ask, Your Honors, is to enforce the appeal waiver. Our ask is to conclude, if Your Honors must reach the merits, that there is no impermissible delegation, the broad parameters, the decision of whether to impose the condition, the broad framework was all imposed by the court, the means, the details, the management, the administration, that is all fair game for probation to have. And they don't have any more than that in Special Condition 10. They make for a lot of litigation on post-sentencing. When I was a prosecutor, and that was almost 10 years total, we didn't... I thought you were saying it was 10 years ago. Much more than 10 years ago. During the Betamax era. I was wondering what that was. We didn't get anybody to waive an appeal. We thought it was a good idea to get the appeals court to review it. We didn't have a sentencing guideline, but there were no appeal waivers. Anybody could appeal if they wanted to. If they didn't like it, if they could go on. It was a new thing after I left the prosecutor's office. And if you're going to do them, I've seen me enforce them. Contracts. We've said that. Not only that, Judge King. But you give up, but the government gives up usually in exchange for concessions made by the government, whatever they were. Right. Give up three or four counts to get one. That's right, Judge. The government moved to dismiss multiple felony counts. He received acceptance of responsibility. The federal prosecutor negotiated with the state prosecutor to dismiss state charges. He was looking at a mandatory 25 years in the state system. That case was dismissed after the federal prosecutor requested it be dismissed. That's also on the record, at least the negotiations, the back and forth between the AUSA and the state prosecutor. If Mr. Jones wanted to advance challenges to his sentencing conditions, he could have negotiated a different appeal waiver, but he didn't. Or he could have pled without an appeal waiver. Or he could have gone to trial. But he's already made his choice, as your honors indicated, on giving up his right to have these challenges, to have these conversations. And it undermines the benefit of the bargain for the government and the court spending resources and time here. And if we believe that it's not going to be a benefit to the government when a defendant signs an appeal waiver, there's a lot less bargaining chips that the defendants have to bring to the table for us. It's going to hurt defendants in the long run. This is taking away, if he's allowed to still appeal despite an appeal waiver, one of the most substantial things a defendant has to offer when negotiating for a better plea. And so Mr. Jones may think in a narrow sense it's hurt some, but this does help defendants situated like Mr. Jones in the long run by having Mr. Jones and those like him bringing something substantial to the table for the government so that we don't have to be here litigating procedural questions in language of special conditions if he's negotiated away his right to challenge them later. And for that reason, we ask the appeal waiver to be enforced. And if we reach the merits judge, we ask you to affirm. And if the court has no further questions, we will rest on our briefs. Thank you, Mr. Daniels. Thank you very much. Thank you. A few brief points in reply. I heard my colleague say that this is not like sort of Lubkin because there's not the claim that the district judge never had the authority. And that's exactly what I'm saying here. That the district judge, for the purpose of the appeal waiver, the claim is the district judge never had the authority to issue a condition. So it is illegal. And in fact, I would note that this as a term by the court language was added by Congress. I took your colleague's point to be slightly more nuanced than that. That there is no doubt that the district court had the authority to issue the condition. But the question is, did it have the authority to issue the procedural means of carrying out that condition? You're not disputing that the district court had full authority to order drug testing. I concede that, but I say that it lacks statutory and constitutional authority to say you do drug testing whatever probation says. Right, but the rub there, right, is that as soon as you say that, right, so they had the authority to do this thing, right, but the means of doing it was in play. Then the result of your argument is that there is no waiver as that applies to anything other than fact-finding, right? Because that would also be true in saying under 3553A, the district court has no authority to sentence without considering the nature and circumstances of the offense, right? And so because that's there, if that's your argument, you just say that's beyond the statutory authority, right? And so it seems like to me we have drawn a much narrower line than that of those things that are so fundamental that they could not have been contemplated by the parties. No, just what I'm saying is that for your 3553A factor, we look at, well, what was the number that sort of popped out? And the number was 240 months. And as long as that's within the statute. I think you've read enough of our cases to know we don't just look at the number up here. We actually look at, like, the details given and the arguments that are raised and the responses that are made. We do not just look at the number under 3553A. In fact, we are quite demanding of district court judges with respect to each of those factors where non-frivolous arguments are made. Well, Judge, what I was saying is for the purposes of an appeal waiver, what we look at is what was the number that popped out? Is that within the statutory maximum? Yes, no. You have an appeal waiver. It's under the ceiling, end of case. My argument here is that this condition is beyond the power of the court to impose. Is that any different from a claim that a particular enhancement is beyond the power of a court to impose? Because it makes a mistake, you allege. I mean, that happens all the time. But we say that's barred by the appeal waiver. Right, so it would be statutorily authorized upon certain findings. I'm saying here that there are no findings that any judge could ever make in this country or in this circuit that would authorize the condition if it means what I thought that it meant before I heard the government's concession here. But that's the position for the appeal waiver is that it is beyond the power of the court to impose. And I note that prior to 1994, probation had the authority to do unlimited tests. And Congress added that language in 3583D that as determined by the court in 1994, which according to the First Circuit, was designed specifically to restrict the power of probation. And so my claim, again, for the purposes of the appeal waiver is the judgment has a provision that is statutorily unauthorized, just like in Johnson. It's a statute that says that the court's got to set the schedule for restitution. In Johnson, this court said it's an Article III problem if the court doesn't follow that. And so this is just like Johnson, that it's a constitutional problem because Congress has assigned a decision maker, and that decision maker is the judge. And so for the purposes of the appeal waiver, I think you say it survives the appeal waiver because the claim, as framed, is it's beyond the power of the court to impose. Then when you get to the merits, if the government is fine to say, but no more than any test beyond III has to come with the signature of Judge Kane, I am fine with that concession. And that would solve the issue. I think it will come as a surprise to probation. But I am fine with that because that's the position that I am arguing here. And so if that is, in fact, how you're going to interpret it, A-OK with me. Just go to probation because that's what you're supposed to, have probation go to the judge because that's what I say that the statute requires, where the judge has to set some schedule. And that's all that I'm asking here. And so this is a very narrow exception that I am. Do you agree, I guess, assume for a minute that I think it doesn't, that Condition 10 doesn't delegate anything. Do you agree that Condition 3 authorizes three tests to be done?  Yes. And then other tests as ordered by the court? Yes, so as long as it's not- Right, and is your argument that the probation officer has no discretion with respect to the day for those three tests? Like if I wanted to be on Tuesday, you know, September the 15th, right? Is that something the district court has to do? Or do you agree that once the district court has ordered three tests, which it has done in Condition 3, that the day on which they are given is something that the probation officer can determine? I would say that with respect to the first test, Congress does give a sort of time frame when that first test has to happen. And that's described in Condition 3. But as to 2 and 3, probation can sort of set that. And I would note, for example, in the Seventh Circuit, they say, you know, what the judge has to do is to say that probation can give you tests no more than four times a month, no more than once a day. And so I don't have an issue with when probation runs the test. I just have an issue with the number of tests they're going to run. Because again, if the client pops up positive twice- Would it be, in your view, a constitutional or statutory problem if Condition 3 instead said, you got this first test that's sort of unique because of the timing, and then the defendant shall undergo no more than 100 tests, and no more than four in a month, within the discretion of the probation officer? And then the probation officer could decide to give two tests or 100 tests? Would that be a permissible context? Because the district court there has indeed ordered up to 100 tests. And Judge, if I could answer, my time has expired. Go ahead, please. Thank you. Yes. In fact, that's exactly what the Seventh Circuit does. Because I, as a defense attorney, I can challenge the sentence, and so I can say, you know, under 3553A, the court should not have imposed it. Now, again, not with an appeal waiver, but in a regular one. I can come to this court, and I can ask this court to engage in a reasonableness review, and to say, you know, doing five tests a day is unreasonable. So we're going to send it back. And, in fact, that's what the Seventh Circuit has done, that sometimes the judge goes way overboard. But when the judge says, you know, that it's going to be no more than once a week, you know, that gets a fair result. But you're saying you can raise all those issues even without presenting them to the district court at sentencing? You can come to the Court of Appeals and raise Cain about all that stuff without even raising it in the sentencing court? I would say that on. You'd have to imagine the court-appointed lawyer. Well, thank you, Judge. Thank you, Judge. You can keep us working. I'm not sure that was a compliment. I know you took it that way. I did, I did, I did, I did. Yes, Judge, I. That was a compliment. I am trying to make sure. It definitely was a compliment. I am trying to make sure that we can.  You got us, and we're arguing about this thing, and this plea waiver says you can't appeal it. And so, Judge, what I would say is. The sentencing waiver says you can't. Once again, setting aside the appeal waiver, if the judge says, you know, test no more than three times a week, and the defendant didn't object below, it's going to be hard on direct appeal to say, well, you didn't complain about it, so it's got to be so unreasonable that the Fourth Circuit exercises its. You're a mousetrap of the district judge. That's what this stuff about plain error is. You boast to present your issues to the sentencing court.  To the court. And then you get review of them when you come to the Court of Appeals. But the issue that I'm raising here, Judge, is that if, for the purposes of the appeal waiver, that the judge imposed a condition that is ultra vires, it is beyond the limits of what Congress has authorized any judge to ever ask. That's not what you have here. You're way off in blue sky. But for the appeal waiver, that's how, that is what I say survives the appeal waiver, is that it has to be that, that very narrow claim, that it's beyond the power of the court to impose. If you conjure up some circumstance, then that ain't new with the case. And then you've got a right to come up here and complain. That's what your position is. To survive an appeal waiver, it is a very narrow exception. And so I would have to frame the argument as one that the judge has done something that exceeds his power under the law, that no judge ever could do it. And that's why I say here, again, now having heard the concession, I would just say, fine, the appeal waiver doesn't apply. If you would just, you know, sort of say that the government says that this condition means the probation's got to get Judge Kaine to sign off on test 456, I've got no complaint about that. And that'll clear up everything, because this is a condition that everybody uses in South Carolina, and it'll be clear to everybody as to what it means. I have no objection to that. If that's the position the government takes. Well, alternatively, we can just not answer the question, and on test four, your client can challenge. But I would say, Judge, that again, I've got several other appeals that are coming your way from South Carolina. We don't decide this case in order to resolve a case that is not yet before us. That's not typically what we try to do, right? Well, I'm going to say that that concession from the government, I'm going to be making that when it comes. So all I'm saying is that if that's what this condition means, then my claim can be affirmed because there is no constitutional problem if Judge Kaine is, in fact, signing off on 456. And so that would be a very short opinion to write. We love that. Yes, sir. Thank you. Be short, just so you can pay a waiver of applause, too. A bit too short, Judge, but thank you. Thank you, Mr. Anderson. I want to thank the Boat Council for their valuable arguments. And Mr. Anderson, in particular, I want to thank you for taking this case on as a court-appointed lawyer. Even more grateful that you're doing that, knowing full well, as maybe some folks don't know, that our court-appointed lawyers are essentially working without pay since July 3rd because of budget problems and concerns, which hopefully will get resolved. But we thank you for that. We also thank you for making the court aware of the adverse authority in the Sixth Circuit. You know, that's obviously something that we should expect of lawyers, but it's refreshing that you did that here today, and we're grateful for that as well. And Mr. Daniels, thank you for ably representing the interests of the United States in this case. We'll come down and greet both of you and then take a short recess before moving on to our final two cases. This audible court will take a brief recess.
judges: Albert Diaz, Robert B. King, Julius N. Richardson